JOSHUA P. BRAITHWAITE,

        Plaintiff,

v.                                                                  Case No. 17-cv-1372-pp

LARRY FUCHS,

        Defendant.

**ORDER SCREENING AMENDED PETITION FOR WRIT OF *HABEAS CORPUS* UNDER 28 U.S.C. §2254 (DKT. NO. 26)**

On October 10, 2017, the petitioner, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254, challenging his December 2014 conviction in Kenosha County Circuit Court for various offenses, including first-degree intentional homicide. Dkt. No. 1 at 1-2; see also State v. Braithwaite, Kenosha County Circuit Court Case No. 2012CF867 (available at https://wcca.wicourts.gov). The petitioner also filed a motion for stay and abeyance, dkt. no. 6, which the court granted, dkt. no. 8. The court first stayed the case on October 30, 2017, dkt. no. 8 at 5, and on April 26, 2018, administratively closed it, dkt. no. 12. On October 2, 2023, the petitioner a motion to reopen, dkt. no. 23, and on October 27, 2023, the court reopened the case and ordered the petitioner to file an amended petition by the end of the day on December 15, 2023, dkt. no. 25.

1

The petitioner timely filed his amended petition on November 8, 2023. Dkt. No. 26. This order screens the amended petition under Rule 4 of the Rules Governing Section 2254 Cases.

I.  **Background**

   A.  Direct Appeal

After a ten-day trial, a jury found the petitioner guilty of first-degree intentional homicide, first-degree sexual assault and kidnapping, all with the use of a dangerous weapon and as a repeater. State v. Braithwaite, 373 Wis. 2d 310, ¶¶2-3, 5 (Wis. Ct. App. 2017). The Kenosha County Circuit Court sentenced the petitioner to life imprisonment with a consecutive sentence of 87 years and 35 years of supervised release. Dkt. No. 26 at 2; see also Braithwaite, Case No. 2012CF867.

The petitioner directly appealed his conviction to the Wisconsin Court of Appeals "on the grounds that the trial court erroneously exercised its discretion when it denied his motion for a mistrial after [the petitioner]'s probation agent revealed to the jury Braithwaite's prior adjudication for a sexual offense." Braithwaite, 373 Wis. 2d at ¶1. The Court of Appeals explained that before trial, the State had filed an "other acts" motion "seeking to introduce evidence of [the petitioner]'s prior juvenile adjudication involving a home invasion and first-degree sexual assault of a child in 2004," which the trial court had denied. Id. at ¶2. Nonetheless, during the trial testimony of the petitioner's probation agent, some of the jurors learned that the petitioner had a previous conviction for a sexual offense when they observed "'some information about sex or sex

offender' written on [the probation agent]'s files that he brought to court." Id. at ¶4. After the jury returned a guilty verdict on all charges, the trial court conducted a post-verdict *voir dire*, at which "[t]he court asked each juror a variation of two questions: (1) what, if anything, did you see on [the probation agent]'s folder, and (2) if you saw any information on the folder, were you able to set it aside to reach a verdict in the case?" Id. at ¶6. As the Court of Appeals describes it, "[a]lthough only seven jurors admitted seeing the writing on the file, the court learned during the postverdict *voir dire* that the jurors had discussed the information during deliberations." Id. According to the Court of Appeals, "[a]ll the jurors reported that they were able to set aside the information gleaned from [the probation agent]'s files, that it did not affect their impression of [the petitioner], and that it did not have an impact on the verdict." Id. Based on the jurors' responses, the trial court denied the petitioner's motion for a mistrial. Id.

The Wisconsin Court of Appeals concluded that the trial court had properly exercised its discretion in denying the petitioner's motion for a mistrial. Id. at ¶1. The appellate court determined that "[t]he trial court did everything right under the circumstances: it provided limiting jury instructions,[1] conducted individual *voir dire* of the jurors and obtained

---

[1] The appellate court explained that "the trial court provided the jury with cautionary instructions, albeit indirect ones as the scope of the issue was not known until the jury was already done deliberating." Braithwaite, 373 Wis. 2d at ¶12. It explained that after "[the petitioner] testified and acknowledged that he had four previous convictions," the trial court instructed the jury "'that a criminal conviction at some previous time is not proof of guilt of the offense

3

assurances from each juror that the information on [the probation agent's] folder did not impact the verdict." Id. at ¶8. The appellate court also concluded that "[t]he jury's knowledge that the defendant had a prior adjudication for a sexual offense was not sufficiently prejudicial to warrant a new trial" and that "[t]here was also sufficient evidence adduced at trial to support the jury's finding of [the petitioner's] guilt." Id. at ¶14. The Court of Appeals affirmed the petitioner's conviction. Id.

The petitioner filed with the Wisconsin Supreme Court a petition for review, which the Supreme Court denied on March 13, 2017. State v. Braithwaite, 374 Wis.2d 161 (Wis. 2017).

B.   Original Petition and Stay

On October 10, 2017, the petitioner filed his original petition for writ of *habeas corpus* under 28 U.S.C. §2254 with this court. Dkt. No. 1. The original petition raised three grounds for relief: (1) whether the trial court erroneously exercised its discretion when denying the petitioner's motion for a mistrial after the probation agent revealed his prior adjudication for a sexual offense, (2) whether the petitioner had notice of the investigation or the charges on which he was convicted and (3) whether officers coerced the petitioner into making an involuntary self-incriminating statement using "trickery" and misconduct. Id. at 6-8. In the original petition, the petitioner conceded that he had not raised

---

now charged'" and that the jury should "consider only the evidence received during the trial." Id.

the last two grounds in state court, asserting that his post-conviction counsel was ineffective. Id.

The petitioner subsequently filed a motion to stay these federal *habeas* proceedings while he exhausted his state court remedies. Dkt. No. 4. He stated that he was pursuing a Wis. Stat. §974.06 motion regarding his allegation that his post-conviction counsel was ineffective. Id. On October 30, 2017, the court granted the motion to stay the federal proceedings. Dkt. No. 8 at 5. A few months later, on April 26, 2018, the court "administratively close[d] the petitioner's case (with the parties retaining all the rights they would have had had the case not been closed for administrative purposes), until the petitioner notifie[d] the court that his state court proceedings have finished." Dkt. No. 12 at 2.

On October 2, 2023, the petitioner filed a motion to reopen the federal *habeas* case. Dkt. No. 23. He attached two orders from the Wisconsin Supreme Court. Dkt. No. 23-1; see also Braithwaite v. Boughton, Appeal No. 2018AP1335 (available at https://wscca.wicourts.gov/). The first order—dated January 23, 2023—denied the petitioner's motion to extend the time in which to file a petition for review of the court of appeals' decision, explaining that the Wisconsin Supreme Court did not have jurisdiction to do so. Dkt. No. 23-1 at 2. The second order—dated February 17, 2023—denied the petitioner's motion for reconsideration of the Supreme Court's January 23, 2023 order. Id. at 1. In a status report filed on September 5, 2023, the petitioner advised this court that he was filing a "motion for writ of certiori in [the United States Supreme

5

Court] soon/still preparing the motion." Dkt. No. 22. The petitioner's motion to reopen, however, stated that after "review [of] case law and statute," the petitioner had determined that it would "not do no justice" for him to petition the United States Supreme Court for *certiorari*. Dkt. No. 23 at 1.

On October 27, 2023, the court granted the petitioner's motion to reopen. Dkt. No. 25. The court explained that "[b]ecause the Wisconsin Supreme Court has ruled on the petitioner's motion for extension of time and his subsequent motion to reconsider, it appears that the petitioner has exhausted his state court remedies." Id. at 3. The court ordered the petitioner to file an amended petition by the end of the day on December 15, 2023. Id. The court explained that, "[i]f the court receive[d] an amended petition by the end of the day on December 15, 2023, it [would] screen the amended petition." Id. at 3-4.

C. Amended Petition

In describing his direct appeal, the petitioner stated that he had raised the following grounds before the Wisconsin Court of Appeals: "trial court erred, as a matter of law when it denied the defense motion for mistrial were [sic] parol[e] agent[']s intentionally show at jury that he was a sex offender which other acts motion barred it by trial judge to come in court." Id. at 3. The petitioner recounted that the Wisconsin Court of Appeals had affirmed his conviction and that the Wisconsin Supreme Court had denied his petition for review. Id. The petitioner stated that on July 2, 2018, he had filed a Knight

petition[2] with the Wisconsin Court of Appeals. Id. at 4. Under "grounds raised," the petitioner wrote the following: "Motion to suppress in custody statement, wrongly applied consciousness of guilty [sic], DNA surcharge applied to all felonies when that statute came in effective [sic] 2014 not 2012[.]" Id. The petitioner also drew an arrow from "grounds raised" to the margin, where he wrote "ineffective appellate counsel[.]" Id. The petitioner recounted that he had received a hearing at which he could present evidence and that the Wisconsin Court of Appeals had ruled: "Affirmed—Appellate counsel not ineffective[.]" Id. The petitioner reported that the Wisconsin Court of Appeals had issued this ruling in November 2022. Id. at 5.

The petitioner raises five grounds for relief in his amended petition. Id. at 6-18. First, he argues that the trial court erroneously exercised its discretion in denying his motion for a mistrial given that the jurors learned of the petitioner's status as a sex offender during the probation agent's testimony. Id. at 6-8. The petitioner explains that because "he was 12 or 13 years old she was 11 years old," he was adjudicated as a juvenile for previous sex offense. Id. at 6. The petitioner maintains that "there was no sex involved just kissing and touch of the breast[.]" Id. He asserts that the "court of appeals said the only reason they didn't overturn the conviction is cause appellate counsel in appeal didn't put in there the touch of the breast was [an] accident[.]" Id. at 6-7. The

---

[2] A "Knight petition" is a state-court postconviction petition, which allows a defendant to challenge the effectiveness of his appellate counsel. See State v. Knight, 168 Wis.2d 509, 522 (Wis. 1992) (concluding that "to bring a claim of ineffective assistance of appellate counsel, a defendant must petition the appellate court that heard the appeal for a writ of habeas corpus").

7

petitioner says that his parole agent "intentional[ly] wrote on a big sticker in bold letter that the defendant was a sex offender"; that while testifying, his parole agent "directly set the big fold[er] with the sticker say[ing] sex offender facing every jury member"; and that while leaving the witness stand, his parole agent walked out the courtroom with the big sticker "facing the jury once again[.]" Id. at 7. Finally, the petitioner asserts that the trial court never gave the jury a cautionary instruction and that during the post-verdict *voir dire* "the trial judge was pressuring the jury to say [the sex offender sticker] did not prejudice th[eir] decision/verdict[.]" Id. at 7-8.

Second, the petitioner contends that the trial court should have suppressed the in-custody statement he provided law enforcement on July 23, 2012. Id. at 8-15. The petitioner alleges that officers took him into custody that day without explaining the reason for his arrest and that he believed his arrest resulted solely from a parole violation. Id. at 8-10. The petitioner contends that officers did not inform him of his Miranda rights—or that they suspected he was involved in a homicide—until after the officers had asked him questions about his whereabouts and activities over the last few weeks. Id. at 8-15. The petitioner asserts that the officers interrogated him in a cold room and that they ignored the fact that he was admittedly "under the influence of marijuana" during the questioning. Id. at 9. The petitioner maintains that he never waived his right to counsel and that the officers continued to ask him questions even after he told them "he d[idn't] want to talk no more." Id. at 11, 15.

8

Third, the petitioner alleges that the trial court wrongly allowed evidence of his "consciousness of guilt" to be used at trial. Id. at 16-17. The petitioner explains that over his objections, the trial court admitted evidence of the petitioner missing appointments with his probation and parole agent between the date of the homicide (July 9, 2012) and the date of his arrest (July 23, 2012). Id. The petitioner acknowledges that he missed these appointments but contends that this did not represent "consciousness of guilt." Id. He explains that he missed these appointments because he "was consuming a lot of drugs and drinking alcohol[.]" Id. The petitioner says that he was concerned about attending these appointments because his probation agent told him that "if he drop[ped] dirty again he will be arrested and revocated [sic] and sent back to prison." Id. He explains that "instead of going to his appointment on July 9, 2012[,] the petitioner lied to his girlfriend and family so they would not worry about his wellbeing[.]" Id. The petitioner asserts that at "no time between July 9, 2012 and July 23, 2012 did the [petitioner] tr[y] to take flight or leave the city or state[.]" Id. at 17. He says that he did not know anything about the homicide until officers spoke with him on July 23, 2012. Id. He alleges that "consciousness of guilt was used in the wrong manner and was presented to the juries to find him guilty which also prejudice[ed] him at trial." Id.

Fourth, the petitioner argues that the trial court erred by applying a $250 surcharge to each of the petitioner's three felony counts. Id. at 18. The petitioner contends that the trial court should have applied only a single surcharge for all three felony counts, instead of assessing the $250 surcharge

9

three times. Id. The petitioner states that "each felony came in effect [in] 2014 and not [in] 2012[,] when defendant was first charged with the 3 crimes[.]" Id.

The petitioner's fifth ground states:

> Critical Evidence—the defendant was seen in a day care video away from the crime scene around the same time making it impossible to commit the crime.

Id. The petitioner does not say whether his trial lawyer failed to present this "critical evidence" or whether the trial court suppressed this "critical evidence." Nor does he state whether he presented this ground for relief during his direct appeal or petition for postconviction relief. Id. at 3-4.

## II. Rule 4 Screening Standard

Rule 4 of the Rules Governing §2254 proceedings provides:

> If it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion or other response within a fixed time, or to take other action the judge may order.

A court allows a *habeas* petition to proceed unless it is clear that the petitioner is not entitled to relief in the district court. At the screening stage, the court expresses no view as to the merits of any of the petitioner's claims. Rather, the court reviews the petition and exhibits to determine whether the petitioner alleges he is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). If the state court denied the petition on the merits, this court can grant the petition only if the petitioner is in custody as a result of: (1) "a decision that was contrary to, or involved an

10

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d).

The court also considers whether the petitioner filed within the limitations period, exhausted his state court remedies and avoided procedural default. Generally, a state prisoner must file his *habeas* petition within one year of the judgment becoming final. 28 U.S.C. §2254(d)(1)(A). In addition, the state prisoner must exhaust the remedies available in the state courts before the district court may consider the merits of his federal petition. 28 U.S.C. §2254(b)(1)(A). Keeping with this, "federal courts will not review a habeas petition unless the prisoner has fairly presented his claims 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings.'" Johnson v. Foster, 786 F.3d 501, 504 (7th Cir. 2015) (quoting Richardson v. Lemke, 745 F.3d 258, 268 (7th Cir. 2014)). "This requirement has two components: the petitioner's claims must be exhausted, meaning that there is no remaining state court with jurisdiction, and the exhaustion must not be attributable to the petitioner's failure to comply with the state court system's procedural rules." Id. Even if a petitioner has exhausted a claim, the district court may still be barred from considering the claim if the petitioner failed to raise the claim in the state's highest court in a timely fashion or in the manner prescribed by the state's procedural laws. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999); Thomas

v. McCaughtry, 201 F.3d 995, 1000 (7th Cir. 2000). If the district court discovers that the petitioner has included an unexhausted claim, the petitioner either must return to state court to exhaust the claim or amend his petition to present only exhausted claims. Rose v. Lundy, 455 U.S. 509, 510 (1982).

### III.  Discussion

The amended petition again claims that the trial court erred by (1) denying the petitioner's motion for mistrial, (2) not suppressing his in-custody statement, (3) using "consciousness of guilt" evidence in the wrong way, (4) charging the petitioner multiple surcharges and (5) making some kind of error with regard to "critical evidence." Dkt. No. 26 at 6-18.

The court will allow the petitioner to proceed with his first ground for relief—that the trial court wrongly denied his motion for a mistrial—because he exhausted his state remedies for this ground. The record shows that the petitioner raised this due process issue with the trial court and then again with the Wisconsin Court of Appeals, before the Wisconsin Supreme Court denied his petition for review on March 13, 2017. The petitioner's direct appeal of this issue satisfies the exhaustion requirement. See Johnson, 786 F.3d at 504. The petitioner timely filed his original *habeas* petition on October 10, 2017, which contained this ground for relief.

But the court will not allow the petitioner to proceed with his other grounds for relief because he has not exhausted his state remedies for those grounds. The petitioner acknowledges that he did not raise any of these grounds during his direct appeal. Dkt. No. 26 at 3-4. The petitioner says that

12

he raised his second, third and fourth grounds for the first time in his later state-level petition for postconviction relief. Id. at 4. The petitioner does not state that he raised his fifth ground for relief—that he has "critical evidence" regarding his innocence—in his state-level petition. Id.

Regardless of whether the plaintiff raised his fifth ground in his state-level petition along with his other grounds, the state-court record demonstrates he did not exhaust grounds two through five. Braithwaite, Appeal No. 2018AP1335 (available at https://wscca.wicourts.gov/). The record reflects that the Wisconsin Court of Appeals determined that it lacked jurisdiction over the petitioner's petition for postconviction relief because the petition was untimely. Id. Because the Wisconsin Court of Appeals lacked jurisdiction to review these grounds, the petitioner has not properly exhausted these grounds for relief. See O'Sullivan, 526 U.S. at 848 (holding that the court "ask[s] not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts"). The court will dismiss the petitioner's second, third, fourth and fifth grounds for relief because he has not exhausted these grounds.

The court must dismiss the petitioner's fourth ground for relief—that the trial court erred by charging him multiple surcharges—for an additional reason. The petitioner appears to argue that the trial court misapplied a state law requiring a defendant convicted of a felony to pay a surcharge. Dkt. No. 26 at 18. This argument is not cognizable on *habeas* review. This court may grant

13

a §2254 *habeas* petition only if the petitioner is in custody as a result of (1) "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d). The petitioner's argument regarding the surcharges does not fall into either of these categories—it appears to be an argument that the state court misapplied state law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 63 (1991). The court must dismiss the petitioner's fourth ground for relief.

**IV.    Conclusion**

The court **ORDERS** that the petitioner may proceed on his first ground for relief.

The court **DISMISSES** the petitioner's second, third, fourth and fifth grounds for relief.

The court **ORDERS** that within sixty days of the date of this order, the respondent must answer or otherwise respond to the petition, complying with Rule 5 of the Rules Governing §2254 Cases, and showing cause, if any, why the writ should not issue.

The court **ORDERS** that the parties must comply with the following schedule for filing briefs on the merits of the petitioner's claims:

(1) the petitioner has forty-five days after the respondent files the answer to file a brief in support of his petition;

(2) the respondent has forty-five days after the petitioner files his initial brief to file a brief in opposition;

(3) the petitioner has thirty days after the respondent files the opposition brief to file a reply brief, if he chooses to file such a brief.

If, instead of filing an answer, the respondent files a dispositive motion:

(1) the respondent must include a brief and other relevant materials in support of the motion;

(2) the petitioner then must file a brief in opposition to that motion within forty-five days of the date the respondent files the motion;

(3) the respondent has thirty days after the petitioner files his opposition brief to file a reply brief, if the respondent chooses to file such a brief.

The parties must submit their pleadings in time for the court to receive them by the stated deadlines.

Under Civil Local Rule 7(f) (E.D. Wis.), briefs in support of or in opposition to the *habeas* petition and any dispositive motions must not exceed thirty pages, and reply briefs may not exceed fifteen pages—not counting any statements of fact, exhibits and affidavits. The court asks the parties to double-space any typed documents.

Under the Memorandum of Understanding between the Wisconsin Department of Justice (DOJ) and the U.S. District Court for the Eastern District of Wisconsin, the court will notify the DOJ (through the Criminal

Appeals Unit Director and lead secretary) of this order via Notice of Electronic Filing (NEF). The DOJ must inform the court within twenty-one days of the date of the NEF whether it will accept service on behalf of the respondent (and, if not, the reason for not accepting service and the last known address of the respondent). The DOJ must provide the pleadings to the respondent on whose behalf it has agreed to accept service of process.

Dated in Milwaukee, Wisconsin this 14th day of February, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**